Skadden, Arps, Slate, Meagher & Flom llp

ONE MANHATTAN WEST
NEW YORK, NY 10001
————
TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

FIRM/AFFILIATE OFFICES
————
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
————
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
(212) 735-3792
DIRECT FAX
(917)-777-3792
EMAIL ADDRESS
CHRISTOPHER.MALLOY@SKADDEN.COM

July 27, 2021

**VIA ECF**

The Honorable P. Kevin Castel
United States District Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

      RE:   *Castle Apparel Limited et al. v. Del Vecchio et al.*,
              No. 1:21-cv-04406 (PKC)

Dear Judge Castel:

      On behalf of defendants Claudio Del Vecchio, Matteo Del Vecchio, DV Family LLC, and Delfin S.A.R.L. (collectively, the "Del Vecchio Defendants"), and in accordance with Rule 3.A of Your Honor's Individual Practices, we respectfully submit this letter to summarize the bases for the Del Vecchio Defendants' anticipated motion to dismiss the complaint (ECF No. 1) (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6), motion to stay discovery pending resolution of the motion to dismiss, and to propose the briefing schedules on those motions. An initial pre-trial conference is currently scheduled for August 11, 2021. (ECF No. 15)

### Background

      Plaintiffs Castle Apparel Limited and TAL Apparel Limited ("TAL") (collectively "Plaintiffs") are investors in Brooks Brothers Group, Inc. ("Brooks Brothers" or the "Company"), which filed a petition under Chapter 11 of the Bankruptcy Code in July 2020 after its business was severely impacted by the COVID-19 pandemic. In the Complaint, Plaintiffs seek to recover TAL's investment in the Company by alleging that the Company's former Chairman and Chief Executive Officer, Claudio Del Vecchio, his son and Chief Administrative Officer, Matteo Del Vecchio, and the remainder of the Del Vecchio Defendants were majority shareholders

The Honorable P. Kevin Castel
July 27, 2021
Page 2

of Brooks Brothers, and breached their contractual and fiduciary duties "when they put their own financial interests ahead of those of the Company" and "refused to pursue bids" for an acquisition of the Company in 2019.  (Compl. ¶1)  As set forth below, Plaintiffs' claims are without merit and should be dismissed.

TAL's investment in the Company originated in 2016 amidst growing concerns about the Company's financial performance.  The Del Vecchios approached TAL, the Company's primary garment producer, regarding a potential investment in the Company.

TAL was provided with financial information regarding the Company, and TAL executives met with the Del Vecchios in March and April of 2016 to discuss a potential investment and "posed several questions about the need for the investment, the Del Vecchios' plans for TAL, and Brook Brothers' prospects."  (Compl. ¶¶30-31)  The initial term sheet proposed a "drag along" provision that would require TAL to sell its shares to a third-party if the Del Vecchios sold their entire stake in the Company.  (Compl. ¶32)  After the meetings in April, "TAL continued to consider the transaction but was not willing to invest without protection for its investment" and "[i]n particular, the Del Vecchios' proposed 'drag-along' rights were unacceptable to TAL because it was concerned that the Del Vecchios could force TAL to sell its equity for a loss in a future sale."  (Compl. ¶33)  As a result, TAL requested further protection "given the uncertainty in the retail industry and Brooks Brothers' financials."  (*Id.*)  In response, the Del Vecchios proposed a "make-whole" provision under which the Del Vecchios "could only force TAL to sell its equity in a third-party sale if the sale was for more than TAL's original investment or if the Del Vecchios made TAL 'whole' on its investment."  (Compl. ¶35)  Following a negotiated MOU and further diligence, TAL, and TAL's newly created subsidiary Castle, entered into a Securities Purchase Agreement on June 23, 2016, and then a Stockholders Agreement a few days later, under which TAL invested a total of $100 million in the Company – including $50 million in equity and $50 million pursuant to a convertible note – and became a minority stockholder in the Company.  (Compl. ¶37)

Section 4(a)(i) of the Stockholders Agreement included the "drag along right" to address TAL's concerns that the Del Vecchios might negotiate a sale of the Company that would result in a loss on TAL's investment, and provided that:

> The Principal Stockholders may, at any time, negotiate the terms of, and require each Investor to consummate, a Sale of the Company (1) at a purchase price that is based on a valuation of the Company that

The Honorable P. Kevin Castel
July 27, 2021
Page 3

        is greater than or equal to the Minimum Valuation[1] or (2) if the valuation of the Company is less than the Minimum Valuation," then "each Investor shall receive (A) the negotiated consideration for the Sale of the Company from the Independent Third Party purchaser and (B) a cash payment from the Company or the Principal Stockholders in an amount equal to the difference between such negotiated consideration and the aggregate amount that the Investor would have received if the valuation of the Company was equal to the Minimum Valuation.

(Compl., Ex. A, §4(a)(i))

        As the Company continued to struggle financially in 2019, the Company began to consider a potential sale. (Compl. ¶43) PJ Solomon was hired to assist with the sale process and despite outreach to strategic investors and buyers, the Company only received a handful of indications of interest. (Compl. ¶44) The Del Vecchios also considered other potential transactions in an effort to "keep the Company afloat." (Compl. ¶48) Ultimately, after retailers were devastated by the onset of the COVID-19 pandemic, Brooks Brothers filed a voluntary petition for Chapter 11 reorganization in the District of Delaware on July 8, 2020. (Compl. ¶61) On August 14, 2020, the Bankruptcy Court approved a sale of substantially all of the Company's assets under Section 363 of the Bankruptcy Code. (Compl. ¶62)

        The Complaint includes claims for breach of contract, breach of the covenant of good faith and fair dealing, and breach of fiduciary duty against the Del Vecchio Defendants, as well as claims against Claudio Del Vecchio for tortious interference with a contract and fraudulent inducement. Implicit in Plaintiffs' allegations is the misguided assumption that the Del Vecchio Defendants had both contractual and fiduciary duties to pursue a sale of the Company that would protect TAL's investment in the Company. As explained below, there is neither factual nor legal support for that assumption and all five Counts of the Complaint should be dismissed.

---

[1] The "Minimum Valuation" in the Stockholders Agreement means "(i) if prior to the Note Closing Date, $568,000,000 and (ii) if on or after the Note Closing Date, $652,000,000." (Compl., Ex. A, at 3)

The Honorable P. Kevin Castel
July 27, 2021
Page 4

## Legal Argument

**Subject Matter Jurisdiction**

Plaintiffs allege that this Court has original jurisdiction under the diversity statute, 28 U.S.C. §1332(a)(2), because "it is an action between citizens of a state and citizens of a foreign state." (Compl. ¶15)  However, Plaintiffs do not even come close to properly alleging diversity and, in fact, the parties are not diverse.  Plaintiffs are Hong Kong limited companies.  (Compl. ¶¶6-7)  Plaintiffs allege that at least one defendant, Delfin S.A.R.L., is a Luxembourg company. (Compl. ¶11)  That allegation alone destroys diversity, because there are "aliens on two sides of the case." *TLF CBRL LLC v. Societe Generale*, 2020 WL 1304143, at *1 (Mar. 17, 2020).  To make matters worse, Plaintiffs do not allege the *citizenship* of Claudio and Matteo Del Vecchio, only that they are New York *residents*, which is irrelevant.  In fact, both Del Vecchios are Italian citizens, so even if they reside in New York, there would be no diversity jurisdiction.  *Tagger v. Strauss Group Ltd.*, 951 F.3d 124, 126-27 (2nd Cir. 2020) (citizen of Israel who was lawful permanent resident of New York was citizen of Israel, not New York, for purposes of § 1332(a)(2)); *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002).  During a meet and confer call, we alerted Plaintiffs' counsel to these defects in the jurisdictional allegations and were advised that Plaintiffs stood by their invocation of diversity jurisdiction.

Although diversity jurisdiction is lacking, the Del Vecchio Defendants believe the Court may retain subject matter jurisdiction under 28 U.S.C. §1334(b) on the basis that the Action is "related to" the Company's bankruptcy case.  Where, as here, the litigation could "give rise to a claim for indemnification" from a debtor in bankruptcy, the Court "has jurisdiction over it and is not obligated to remand it to state court." *Lothian Cassidy LLC v. Ransom*, 428 B.R. 555 (E.D.N.Y. Apr. 22, 2010).  Here, among other connections to the bankruptcy case, Count III alleges a claim for breach of fiduciary duty against Claudio and Matteo Del Vecchio, who were both directors and officers of the Company.  (*See* Compl. ¶1)  As a result, they would have potential claims for indemnification against the Company (*i.e.* the debtor in bankruptcy) for any finding of liability for actions taken in their corporate capacities.  "[A]ny claim by defendants potentially alters the distribution of assets among the estates' creditors, further supporting a finding that this litigation is 'related to' the bankruptcy proceedings." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (affirming that the Southern District of New York had "related to" bankruptcy jurisdiction); *see also In re LTC Holdings*, 587 B.R. 25 (Bankr. D. Del. 2018) (holding that CEO's contractual indemnification right satisfied requirement for "related to" jurisdiction).

The Honorable P. Kevin Castel
July 27, 2021
Page 5

**The Complaint Fails to State a Claim Pursuant to F.R.C.P. 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) requires that the Complaint "allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013). Neither "threadbare recitals" of the elements of a cause of action "supported by mere conclusory statements," *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010), nor "bald assertions" absent detailed factual allegations, can satisfy these minimum pleading requirements, *Lawtone-Bowles v. N.Y.C.*, 2014 WL 705272, at *2-3 (S.D.N.Y. Feb. 20, 2014). Plaintiffs have failed to meet their pleading burden.

***First***, Plaintiffs' breach of contract claim (Count I) fails based on the plain language of the Stockholders Agreement. Plaintiffs allege that the Del Vecchio Defendants breached the Stockholders Agreement by failing to pay the Make Whole Payment; however, under the terms of the Stockholders Agreement, there was no "Sale of the Company" that would have triggered the Make Whole Provision.

The Stockholders Agreement defines a "Sale of the Company" as:

> the sale (in a single transaction or in a series of related transactions that reasonably should be considered a single transaction) of the Company to any Independent Third Party or group of Independent Third Parties pursuant to which such Independent Third Party or group of Independent Third Parties acquire (i) all of the Common Stock on a Fully-Diluted Basis (whether by merger, consolidation, sale or Transfer of Common Stock, reorganization, recapitalization or otherwise) or (ii) all or substantially all of the assets of the Company and its Subsidiaries, determined on a consolidated basis.

(Compl., Ex. A, at 4)

The Chapter 11 restructuring, which included a Section 363 sale of Brooks Brothers' assets in bankruptcy, was not a "Sale of the Company" as contemplated by the Stockholders Agreement. (Compl. ¶¶77-79) A Chapter 11 plan of reorganization, pursuant to which the Company's stock is cancelled and extinguished by the bankruptcy, is neither a sale of assets nor a sale of common stock to an independent third party. As a result, Plaintiffs cannot state a claim for breach of contract against the Del Vecchio Defendants. *Doyle v. MasterCard Int'l Inc.*, 2016 WL 9649874, at *2 (S.D.N.Y. Dec. 15, 2016) (dismissing contract claim because plaintiffs "do not identify any breach of the alleged contract" by defendant).

The Honorable P. Kevin Castel
July 27, 2021
Page 6

Further, any reading of the Make Whole Provision to be triggered upon a sale in bankruptcy disregards the language of Section 4.1(a)(i).  (*See, e.g.*, Compl. ¶63)  But "a written agreement that is complete, clear, and unambiguous on its face must be [interpreted] according to the plain meaning of its terms."  *Law Debenture Trust Co. of NY v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (internal citations omitted) (affirming dismissal of breach of contract claim).  The plain language of the Make-Whole Provision limits its application to only those circumstances in which "[t]he Principal Stockholders…***negotiate the terms of, and require each Investor to consummate***" a sale of the Company.  (*See* Ex. A, §4(a)(i) (emphasis added))  Here, the Principal Stockholders did not "negotiate the terms" of the bankruptcy plan, nor did they "require" TAL to consummate any sale.

***Second***, Count II, which alleges a breach of the covenant of good faith and fair dealing, equally fails.  The basis for Count II – the fact that TAL did not receive the Make Whole Payment when Brooks Brothers went into bankruptcy – is duplicative of the breach of contract claim.  *See Simon v. Unum Grp.*, 2008 WL 2477471, at *4 (S.D.N.Y. June 19, 2008). (dismissing claim that "rests on the fact that [defendant] has withheld payment of disability benefits to which [plaintiff] feels he is entitled – an assertion factually identical to that contained in the breach of contract claim").  But New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled."  *Id.* (citation omitted).  Where "the allegations underlying the breach of the implied covenant of good faith claim and the breach of contract claim are the same, then the good faith claim is 'redundant' and cannot survive a motion to dismiss."  *Id.* at *2.

Moreover, where, as here, "the relief sought in claiming a breach of the implied covenant of good faith is 'intrinsically tied to the damages allegedly resulting from the breach of contract,' there is no separate and distinct wrong that would give rise to an independent claim."  *ARI & Co., Inc. v. Regent Int'l Corp.*, 273 F. Supp. 2d 518, 522-23 (S.D.N.Y. 2003) (citation omitted) ("Under New York law, claims for breach of the implied covenant of good faith that are intrinsically tied to the damages allegedly resulting from the breach of contract must be dismissed as redundant."); *see also Rojas v. Don King Prods.*, 2012 WL 760336, at *4 (S.D.N.Y. Mar. 6, 2012) (dismissing breach of implied covenant claim despite different allegation than breach of contract claim because plaintiff "does not allege any distinct damage from that conduct").

In addition, Plaintiffs' allegations that the Del Vecchio Defendants would "not consider any potential sale of Brooks Brothers that required them to exercise the make-whole right" (Compl. ¶83) or "refused to pursue bids" in breach of their duty of good faith and fair dealing are insufficient.  Such allegations imply that the Del Vecchio

Defendants had an obligation to actively shop the Company, but no such obligation exists under the terms of Stockholders Agreement or otherwise. Despite Plaintiffs' allegation that the Make-Whole Provision was included "as a protection on the value of Plaintiffs' investment" (Compl. ¶85), by its terms, the provision imposed no *obligation* on any Defendant to pursue a sale of the Company. Nor does the law impose any obligation on Defendants to do so. The "obligation of good faith does not create obligations that go beyond those intended and stated in the language of the contract." *Wolff v. Rare Medium, Inc.,* 210 F. Supp. 2d 490, 497 (S.D.N.Y. 2002), *aff'd*, 65 Fed. App'x 736 (2d Cir. 2003) (dismissing covenant of good faith and fair dealing claim because it "cannot be used to create independent obligations beyond the contract"). If TAL wished to impose an obligation on the Del Vecchio Defendants to *affirmatively* pursue a sale of the Company or sought a right to force a sale of the Company, TAL could have negotiated for that right.[2] "New York law is clear that the implied covenant cannot be used to create independent obligations beyond the contract" and Plaintiffs cannot now "recover for obligations that were not explicitly part of the Agreement." *ARI & Co., Inc. v. Regent Int'l Corp.*, 273 F. Supp. 2d 518, 523 (S.D.N.Y. 2003) (dismissing claim). The parties were "sophisticated players," and the Court may "not now rewrite the parties' contractual text – with express or implied terms – to provide [TAL] with language more beneficial than what it negotiated." *In re Lehman Brothers Holdings, Inc.*, 2015 WL 5828216, at *12 (S.D.N.Y. Sept. 30, 2015) ("That Plaintiffs are now dissatisfied with the bargain they struck and believe that JPMC behaved badly in enforcing its terms is of no moment.").[3]

***Third***, Plaintiffs have failed to state a claim for breach of fiduciary duty (Count III). Plaintiffs allege that the Del Vecchio Defendants, as majority stockholders of the

---

[2] For the same reason, Plaintiffs' assertion that the "demand" to waive the Make-Whole Payment "had the effect of eliminating that provision from the contract" fails to state a claim. (Compl. ¶84) Parties to an agreement are not restricted from seeking a revision or waiver of the agreement's terms.

[3] Both the Stockholders Agreement and the Securities Purchase Agreement also "explicitly state[] that [they] supersede[] any oral representations made by either party prior to [their] signing," which bars Plaintiffs' claim. *See Marans v. Intrinsiq Specialty Solutions, Inc.*, 2018 WL 4759772, at *6 (S.D.N.Y. Sept. 30, 2018) (dismissing implied covenant claim and acknowledging that "[t]o the extent Plaintiff suggests that the Defendants made oral representations regarding the terms of the Agreement, those representations do not form part of the Agreement"); (*see* Compl. Ex. A, Stockholders Agreement, §12(i); Securities Purchase Agreement, §9.4)

The Honorable P. Kevin Castel
July 27, 2021
Page 8

Company, owed fiduciary duties to minority stockholder Castle, and breached those duties by their "desire to avoid their own financial obligations to Plaintiffs." (Compl. ¶¶90-91, 94) The claim is premised on the fundamentally flawed assumption that the Del Vecchio Defendants were under an affirmative obligation to pursue a sale of the Company that would protect TAL's investment in the Company, and fails for at least two reasons: the Del Vecchio Defendants had no duty to "consider any sale transactions that would trigger TAL's rights under the Make-Whole Provision," nor were they precluded from "plac[ing] their own financial interests above the interests of shareholders as a whole." (Compl. ¶93)

Under Delaware law,[4] "'[c]ontrolling shareholders, while not allowed to use their control over corporate property or processes to exploit the minority, are not required to act altruistically towards them.'" *In re Synthes, Inc. S'holder Litig.*, 50 A.3d 1022, 1041 (Del. Ch. 2012) (citation omitted). "Delaware law, does not, however, go further than that to impose on controlling stockholders a duty to engage in self-sacrifice for the benefit of minority shareholders. That is, the duty to put the 'best interest of the corporation and its shareholders' above 'any interest…not shared by the stockholders generally' does not mean that the controller has to subrogate his own interests so that the minority stockholders can get the deal that they want." *Id.*; *see also RCS Creditor Trust v. Schorsch*, 2021 WL 1040981, at *7 (Del. Ch. Mar. 18, 2021) ("A stockholder does not forfeit the right to exercise contract rights or to vote her stock merely by being a controller. There is no duty for a controller to sacrifice on behalf of the company."). Plaintiffs' allegations that the Del Vecchio Defendants refused to "facilitate a potentially better deal for the minority" *at their own expense* in breach of their fiduciary duties are premised on an "astonishing argument that reflects

---

[4] The law of the Company's state of incorporation governs a claim for breach of fiduciary duty by its directors and officers. *See Hart v. Gen. Motors Corp.*, 129 A.D.2d 179, 184-86 (1st Dep't 1987) ("[I]t is Delaware, not New York, which has an interest superior to that of all other States in deciding issues concerning directors' conduct of the internal affairs of corporations chartered under Delaware law.") Brooks Brothers was a Delaware corporation, and as such, this Court should apply Delaware law to the breach of fiduciary duty claim. *See CVC Claims Litig. LLC v. Citicorp Venture Capital Ltd.*, 2006 WL 1379596, at *6 (S.D.N.Y. May 18, 2006) (applying Delaware law to dismiss breach of fiduciary claim against majority stockholder); s*ee also In re Pfizer, Inc. Deriv. Secs. Litig.*, 307 Fed. App'x 590 (2d Cir. 2009) (affirming dismissal of fiduciary duty claims under Delaware law).

The Honorable P. Kevin Castel
July 27, 2021
Page 9

a misguided view of the duties of a controlling stockholder under Delaware law." *Synthes*, 50 A.3d at 1039.

"[T]he law confers a veto right" upon controlling stockholders over any transaction constituting a sale of all or substantially all of the company's assets, and "since the law permits shareholders *qua* shareholders to act selfishly in deciding how to vote their shares," controlling stockholders are not required to "pursue a transaction over which they rightfully held a veto as shareholders." *Thorpe v. CERBCO, Inc.*, 1993 WL 443406, at *5 (Del. Ch. Oct. 29, 1993). Rather, the Delaware Supreme Court has made clear that "[s]tockholders in Delaware corporations have a right to control and vote their shares in their own interest." *Bershad v. Curtiss-Wright Corp.*, 535 A.2d 840, 845 (Del. 1987). The Del Vecchio Defendants were "under no duty to sell [their] holdings in a corporation, even if [they were] a majority shareholder, merely because a sale would profit the minority." *Id.* "To hold otherwise would turn on its head the basic tenet that controllers have a right to vote their shares in their own interest." *Synthes*, 50 A.3d at 1041; *see also RCS Creditor Trust*, 2021 WL 1040981, at *6 (rejecting fiduciary duty claim against controlling stockholder who "would vote his stock in his business interest" and "not giv[e] up his contractual rights and majority ownership" to approve deal).

**Fourth**, the claim for tortious interference against Claudio Del Vecchio because he "refused to consider or explore any purchase offers for Brooks Brothers that would have triggered the make-whole obligations" (Compl. ¶101) necessarily fails because, as explained above, no party had *any obligation*, by contract or otherwise, to entertain or pursue a sale of the Company.

Further, "[a] corporation's officer or director generally cannot be held liable under a theory of tortious interference for causing the corporation to breach a contract." *Solow v. Stone*, 994 F. Supp. 173, 181 (S.D.N.Y.), *aff'd*, 163 F.3d 151 (2d Cir. 1998). Mr. Del Vecchio "cannot tortiously interfere with a contract if he is not a 'third part[y] unrelated to the contract.'" *Id.* As Chairman and CEO of Brooks Brothers, Plaintiffs allege Mr. Del Vecchio "signed the Stockholders Agreement on behalf of Brooks Brothers and the Del Vecchio Family Trust." (Compl. ¶100) But "[a] claim for tortious interference with a contract 'must be based on a *non-party* improperly interfering with a contract between two contracting parties,' and cannot be based on the actions of a director or officer in his official capacity." *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New Jersey*, 894 F. Supp. 2d 288, 337 (S.D.N.Y. 2012), *as amended* (Sept. 19, 2012); *see also Chardin v. Turkie*, 1998 WL 886986, at *1 (S.D.N.Y. Dec. 18, 1998) ("Where the corporate officer/director is acting within the scope of his or her authority, the officer/director is not a third party vis-a-vis the corporation and as such cannot interfere with its own contract.").

The Honorable P. Kevin Castel
July 27, 2021
Page 10

In addition, "[a] cause of action seeking to hold corporate officials personally responsible for the corporation's breach of contract is governed by an enhanced pleading standard." *Joan Hansen & Co. v. Everlast World's Boxing Headquarters Corp.*, 744 N.Y.S.2d 384, 390 (1st Dept. 2002); *see also Scuderi v. Springer*, 2004 WL 2711048, at *2 (S.D.N.Y. Nov. 29, 2004) (dismissing tortious interference claim because "unsupported conclusory statements fail to meet the enhanced pleading standard required to hold corporate officials personally liable"). Plaintiffs must allege that "'the acts of the corporate officers [or directors] were done with the motive for personal gain as distinguished from gain to their corporations,' and that the acts were performed with malice and calculated to impair the plaintiff's business for the defendant's profit." *Rockland*, 894 F. Supp. 2d at 338 (internal quotations omitted). Here, Plaintiffs contend that Mr. Del Vecchio acted to *avoid* triggering the Make Whole Payment, but fail to allege "that the acts were performed with malice" or "calculated to impair" TAL's business.

***Finally***, the claim for fraudulent inducement against Mr. Del Vecchio (Count V) must also be dismissed. Plaintiffs identify two purported "misrepresentations" by Mr. Del Vecchio: (i) an "assurance" that "he would use his own funds to keep Brooks Brothers out of bankruptcy," and (ii) a "representation" that "the Del Vecchios would make Plaintiffs whole in the event of a sale of the Company." (Compl. ¶106)

"[T]o assert a claim of fraudulent inducement with respect to a promise of some future actions or performance, the complaint must allege that the speaker did not intend to fulfill the promise at the time it was made." *Leighton v. Poltorak*, 2018 WL 2338789, at *5 (S.D.N.Y. May 23, 2018); *see also Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 323 (S.D.N.Y. 2012) ("To state a claim for fraudulent inducement under New York law, 'there must be a knowing misrepresentation of material present fact, which is intended to deceive another party and induce that party to act on it, resulting in injury.'") (citation omitted). Plaintiffs must also allege fraudulent intent subject to the heightened pleading requirements of Rule 9(b) to sustain their claim. *See Leighton*, 2018 WL 2338789, at *5 n. 48; *Cohen*, 874 F. Supp. 2d at 324 (dismissing fraudulent inducement claim).

Plaintiffs contend that Mr. Del Vecchio "did not have any intention of using his own money to keep Brooks Brothers out of bankruptcy or compensating Plaintiffs in compliance with the Make-Whole Provision" (Compl. ¶¶107-08), but "[i]t is well settled that a purely conclusory allegation that defendants never intended to perform, standing alone, cannot convert a claim for breach of contract into one for fraudulent inducement to contract." *Scott-Macon Sec., Inc. v. Zoltek Co.*, 2005 WL 1138476, at *11 (S.D.N.Y. May 12, 2005), *aff'd sub nom. Scott-Macon Sec., Inc. v. Zoltek Co., Inc.*, 2007 WL 2914873 (2d Cir. Oct. 4, 2007). The absence of any payout under the

Make-Whole Provision is insufficient to sustain the claim. *See Leighton*, 2018 WL 2338789, at *5 ("[M]ere allegations of non-performance are insufficient to state a claim for fraudulent inducement."); *see also U.S. Capital Partners, LLC v. Stanwich Capital Advisors, LLC*, 2015 WL 4388421, at *6 (S.D.N.Y. July 17, 2015) (dismissing fraudulent inducement claim based on alleged false representation to fund deals because plaintiff "alleges nothing evidencing this [fraudulent] intention other than the fact that [defendants] never fulfilled their obligations under the agreement").

Any alleged "promise" to make Plaintiffs whole "do[es] not concern false representations regarding a present fact separate from the Agreement, but concern[s] the operation of the Agreement itself," and is insufficient to state a claim for tortious interference. *See MCI Worldcom Commc'ns, Inc. v. N. Am. Commc'ns Control, Inc.*, 2003 WL 21279446, at *10 (S.D.N.Y. June 4, 2003) (dismissing fraudulent inducement claim); *see also U.S. Capital Partners*, 2015 WL 4388421, at *4 (concluding "misrepresentation of future intent to perform under the contract" "merges with the contract claim and thus cannot support a separate fraud claim"). "[S]imply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder is insufficient to state an independent tort claim." *U.S. Capital Partners*, 2015 WL 4388421, at *4 (citation omitted).

As Plaintiffs' own allegations demonstrate, they understood the financial risk of their investment in the Company and cannot now seek to hold Mr. Del Vecchio liable for the Company's ultimate bankruptcy and any loss on their investment. *See Netto v. Rastegar*, 2012 WL 4336167, at *5 (S.D.N.Y. Sept. 20, 2012) ("Fraudulent inducement is not intended to function as a blanket insurance policy for anything that can go wrong in a contractual relationship.").

**Stay of Discovery**

A stay of discovery pending resolution of the Del Vecchio Defendants' forthcoming motion to dismiss is warranted. Upon a showing of good cause, the Court has "considerable discretion to stay discovery pursuant to Rule 26(c)." *Valentini v. Grp. Health Inc.*, 2021 WL 861275, at *1 (S.D.N.Y. Mar. 8, 2021) (citation omitted). "In deciding whether to stay discovery pending the resolution of a dispositive motion, courts assess 'the particular circumstances and posture of each case.'" *Id.* The Court considers "(1) whether a defendant has made a strong showing that the plaintiff's claim is unmeritorious, (2) the breadth of discovery and the burden of responding to it, and (3) the risk of unfair prejudice to the party opposing the stay." *Alapaha View Ltd. v. Prodigy Network, LLC*, 2021 WL 1893316, at *2 (S.D.N.Y. May 10, 2021).

The Honorable P. Kevin Castel
July 27, 2021
Page 12

*First*, where, as here, a motion to dismiss "is potentially dispositive, and appears to be not unfounded in the law," this Court has stayed discovery. *See id.* (granting stay pending resolution of motion to dismiss); *Valentini*, 2021 WL 861275, at *1 ("Defendants have made a sufficient showing on the merits, which could potentially be dispositive, that weighs in favor of a stay."); *HAHA Global, Inc. v. Barclays*, 2020 WL 832341, at *1 (S.D.N.Y. Feb. 20, 2020) (granting stay where "Defendants have raised viable grounds for dismissing the Amended Complaint").

As demonstrated above, the grounds for dismissal of each Count of the Complaint are "not unfounded in the law."

*Second*, the "breadth of discovery" also warrants a stay. Plaintiffs name five defendants and allege five counts in the Complaint. *See Alapaha*, 2021 WL 1893316, at *2 (granting stay in action with "conduct spanning over multiple years…six defendants, and countless transactional documents" because "[a]t this stage, even document discovery would be onerous"). The alleged contract-based claims versus the breach of fiduciary duty claim will require very different discovery. While discovery related to the contract claims may be more discrete, Plaintiffs' breach of fiduciary duty claim, based on allegations that the Del Vecchios "refused to pursue value-maximizing bids" for the Company, would require extensive discovery. The fiduciary duty claim would require document and deposition discovery from dozens of third party witnesses, including bankers and bidders, and involve broad discovery of corporate documents and email communications. Discovery prior to the disposition of any or all of Plaintiffs' claims would result in onerous and likely unnecessary discovery. *See HAHA Global*, 2020 WL 832341, at *2 (granting stay because "'proceeding with discovery while the motion is pending would waste the parties' resources and would constitute an undue burden on' Defendants" and "'disposition of the dismissal motions may significantly narrow, if not eliminate, the issues remaining in this case'") (citation omitted).

*Finally*, a stay "pending determination of a dispositive motion that potentially eliminates the entire action will neither substantially nor unduly delay the action, should it continue." *Alapaha*, 2021 WL 1893316, at *3 (citation omitted) (granting stay of discovery pending decision on motion to dismiss); *see also Valentini*, 2021 WL 861275, at *2 ("Plaintiffs will face little prejudice from a stay" because "while the Court understands Plaintiffs' desire for a prompt resolution of their claims, that desire is insufficient to tip the scales in favor of a stay").

\*   \*   \*

For these reasons, the Del Vecchio Defendants intend to move to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and believe that a stay of all discovery is warranted until the Court's resolution of the motion.

The Del Vecchio Defendants propose the following briefing schedule to govern their motions to dismiss and to stay discovery: (i) all Defendants shall file their motions on or before September 2, 2021; (ii) Plaintiffs shall file their oppositions on or before October 12, 2021; and Defendants shall file their replies on or before October 30, 2021.

We are available should Your Honor have any questions.

Respectfully submitted,

/s/ *Christopher P. Malloy*

Christopher P. Malloy

cc:   All Counsel of Record (via ECF)