# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

A. Katrine Jakola, P.C.
To Call Writer Directly:
+1 312 862 3225
kjakola@kirkland.com

300 North LaSalle
Chicago, IL 60654
United States

+1 312 862 2000

www.kirkland.com

Facsimile:
+1 312 862 2200

August 2, 2021

**Via ECF**

The Honorable P. Kevin Castel
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

> Re:   *Castle Apparel Limited, et al. v. Del Vecchio, et al.*, No. 1:21-cv-04406 (PKC)

Dear Judge Castel:

Plaintiffs Castle Apparel Limited and TAL Apparel Limited ("Plaintiffs") respectfully submit this letter in response to Defendants' pre-motion letters seeking leave to file a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and a motion to stay discovery. (Dkt Nos. 24, 25.) Plaintiffs intend to oppose Defendants' motions if leave is granted and this letter summarizes the reasons that Defendants are not entitled to relief on either motion. Plaintiffs also propose briefing schedules for both of the proposed motions. The Court has set an initial pretrial conference for August 11, 2021. (Dkt No. 15.)

## I.   BACKGROUND

Defendants were majority shareholders of Brooks Brothers Group, Inc. ("Brooks Brothers" or the "Company"). Defendant Claudio Del Vecchio was also the Company's Chairman and Chief Executive Officer, while his son Matteo Del Vecchio was the Company's Chief Administrative Officer. As alleged in the Complaint, the Del Vecchio's induced Plaintiffs to invest in the Company through false assurances in 2016. Based on these fraudulent misrepresentations, Plaintiffs "invested a total of $100 million in Brooks Brothers—including $50 million of equity and $50 million pursuant to a convertible note—and became a minority shareholder." (Compl. ¶ 3.) Importantly, Plaintiffs entered into a Stockholders Agreement with all of the named Defendants that provided that Plaintiffs' equity investment in the Company would be protected by a "Make Whole" right. (*Id*. ¶ 39). This "Make Whole" provision required Defendants to make Plaintiffs "whole" if Defendants negotiated and consummated a "Sale of the

# KIRKLAND & ELLIS LLP

The Honorable P. Kevin Castel
August 2, 2021
Page 2

Company" for less than a "Minimum Valuation" defined in the Stockholders Agreement. (*Id*. ¶¶ 39-40.)

By early 2019, Brooks Brothers was not performing well financially. (*Id*. ¶ 4.) Defendants then began a secretive process to solicit potential bids for the company from third-parties. (*Id*.) Through that process, Defendants received several attractive initial indications of interest for the Company. (*Id*. ¶ 46.) But, because these initial indications of interest were below the "Minimum Valuation" in the Stockholders Agreement, Defendants refused to pursue them. (*Id*. ¶¶ 46, 55.) Defendants did not merely ignore the bids, however. Instead, recognizing that the bids presented substantial value for the Company, they attempted to use the bids to coerce TAL into giving up its "Make Whole" rights under the parties' contract. (*Id*. ¶ 53-54.) Defendants expressly refused to pursue these attractive indications of interest unless Plaintiffs took "a haircut" on their Make-Whole rights under the Stockholders Agreement. (*Id*.) And, when TAL refused to give up its rights, Claudio Del Vecchio specifically threatened to "roll the dice" and pursue a sale of the Company in a bankruptcy, in an attempt to evade Defendants' independent Make-Whole obligation to Plaintiffs. (*Id*. ¶ 53.) Defendants had no intention of honoring their Make-Whole obligations to Plaintiffs under any circumstance.

Shortly after that threat, and "well before the COVID-19 pandemic affected the United States retail market," Defendants began preparing for a bankruptcy filing for the Company. (*Id*. ¶ 60.) Ultimately, the Company filed a voluntary petition for Chapter 11 reorganization on July 8, 2020. (*Id*. ¶ 61.) At the time of the filing, Claudio Del Vecchio publicly stated that the filing was the "next step" in the sale process he had begun in 2019 and was intended to provide "protection to facilitate an efficient sale of the business." (*Id*.) The Bankruptcy Court quickly approved a Section 363 sale of the Company on August 14, 2020. (*Id*. ¶ 62.) Since the sale, none of the Defendants have honored their Make Whole obligation to TAL in the Stockholders Agreement.

In May 2021, Plaintiffs filed suit against Defendants alleging five causes of action: (1) breach of contract against all defendants; (2) breach of good faith and fair dealing against all defendants; (3) breach of fiduciary duty against all defendants; (4) tortious interference with contract against Claudio Del Vecchio; and (5) fraudulent inducement against Claudio Del Vecchio. Defendants' pre-motion letters seek leave to file a motion to dismiss all five claims under Federal Rule of Civil Procedure 12(b)(6). Despite already having two months to prepare their pre-motion letter, Defendants request an additional five weeks to file their motion to dismiss. Defendants also seek leave to stay all discovery until that motion is resolved. Because Defendants propose that briefing on the motion to dismiss continue until the end of October, Defendants' proposal could, in effect, delay substantive discovery in the case until 2022. Neither the substance of Defendants' proposed motions nor Defendants' proposed schedule for resolving those motions is well-founded, and Plaintiffs summarize their response on both fronts below.

## KIRKLAND & ELLIS LLP

The Honorable P. Kevin Castel
August 2, 2021
Page 3

## II. SUBJECT MATTER JURISDICTION

As a threshold matter, Defendants' pre-motion letters raise purported "concerns regarding subject matter jurisdiction." (Dkt No. 25.) None of the Defendants assert that this Court lacks subject matter jurisdiction or seeks leave to file a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), however. Accordingly, Plaintiffs take no position here on the jurisdiction issues that Defendants raise in their letter. Plaintiffs will be prepared to address any issues related to subject matter jurisdiction at the initial pretrial conference as appropriate.

## III. THE COMPLAINT SUFFICIENTLY PLEADS ALL FIVE CLAIMS ALLEGED IN THE COMPLAINT

Plaintiffs have sufficiently pled each of the five counts alleged in the Complaint. Plaintiffs do not intend to amend the Complaint to address the arguments raised in Defendants' pre-motion letters. Rather, if Defendants are granted leave to file a motion to dismiss under Rule 12(b)(6), Plaintiffs will oppose the motion and explain why none of Defendants' arguments has merit. Plaintiffs briefly summarize their arguments in response to the issues raised in Defendants' pre-motion letters below.

### A. Breach of Contract

Defendants intend to raise two arguments for dismissing Count I of the Complaint, neither of which has merit. (Dkt No. 24 at 5.) *First*, Defendants assert that the Complaint fails to allege a "Sale of the Company" occurred under the terms of the Stockholders' Agreement. (*Id*.) This argument is quickly refuted on the face of the Complaint. As alleged in the Complaint, and as Defendants concede in their pre-motion letter, the Stockholders Agreement defines a "Sale of the Company" to include the "sale . . . of the Company to any Independent Third Party . . . pursuant to which such Independent Third Party . . . acquire . . . all or substantially all of the assets of the Company and its Subsidiaries." (Compl. ¶ 41 & Ex. A; Dkt No. 24 at 5.) Defendants argue that the "Chapter 11 restructuring . . . was not a 'Sale of the Company' as contemplated by the Stockholders Agreement." (Dkt No. 24 at 5.) But that is not what the Complaint alleges. Rather, the Complaint alleges that the Section 363 sale of Brooks Brothers' assets was "a 'Sale of the Company' under the Stockholders Agreement because it was a sale of all or substantially all of Brooks Brothers' assets." (Compl. ¶ 63.) As a matter of public record and as Defendants acknowledge, the Company's assets were in fact sold to an independent third party on August 31, 2020. *In re Brooks Brothers Group, Inc.*, Case No. 20-11785-CSS, D. Del. Bankr. Ct., Dkt No. 531; 11 U.S.C. § 363 (governing "use, sale, or lease of property" in bankruptcy proceedings). Plaintiffs' argument is facially meritless.

KIRKLAND & ELLIS LLP

The Honorable P. Kevin Castel
August 2, 2021
Page 4

*Second*, Defendants argue that the Make Whole Provision cannot be "triggered upon a sale in bankruptcy." (Dkt No. 24 at 6.) Not so. Defendants do not—and cannot—identify any language in the Stockholders Agreement that purports to limit the definition of a "Sale of the Company" or application of the Make Whole provision to sales outside of bankruptcy. To the contrary, the contractual definition of a "Sale" in the Stockholders Agreement expressly includes sales done through "reorganization" or "recapitalization," (Compl. Ex. A at 4), refuting any suggestion that the contract was intended to exclude "a sale in bankruptcy," (Dkt No. 24 at 6.) With no plain language to point to, Defendants then argue that the language of Section 4.1(a)(i), which provides that the Make Whole Provision applies to sales "negotiated" by the Principal Stockholders, excludes a "sale in bankruptcy." (*Id.*) But this provision says nothing about "bankruptcy" *at all*. Rather, it simply makes clear that the Make Whole Provision is triggered when the Principal Stockholders negotiate a transaction and force the minority shareholders to "consummate" a sale, including a sale of all or substantially all of the Company's assets. That provision applies equally inside and outside the protections of a Chapter 11 bankruptcy.

To the extent that the Defendants are arguing that they did not "negotiate the terms" of the Section 363 sale, that factual dispute cannot be resolved on a Rule 12(b)(6) motion to dismiss. *Financial Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 405 (2d Cir. 2015) (vacating dismissal of complaint in part because "factual dispute" was "inappropriate for resolution on a motion to dismiss"). Rather, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994). And the Complaint sufficiently alleges that the Section 363 sale, which minority shareholders were forced to "consummate," was in fact negotiated by the Principal Stockholders in this case. (Compl. Ex. A, § 4(a)(i).) In particular, the Complaint alleges that the Del Vecchios began and controlled the sale process beginning in 2019. (*Id.* ¶ 44.) When Plaintiffs refused to give up their Make Whole rights, Claudio Del Vecchio threatened to "roll the dice" by "throw[ing] the Company into bankruptcy" and pursuing a sale that way. (*Id.* ¶ 53.) Specifically, Mr. Del Vecchio expressed his belief that he could complete a sale in bankruptcy without honoring the Make Whole Provision. (*Id.* ¶ 54.) A few short months later, Defendants filed a voluntary petition for Chapter 11 Protection and publicly announced at the time that the filing was the "next step" in, and a continuation of, the pre-petition sale process that Defendants had been exploring. (*Id.* ¶ 61.) Roughly one month later, the Bankruptcy Court had already approved a Section 363 sale to SPARC Group, LLC. (*Id.* ¶ 62.) Combined, these allegations state a claim that the Section 363 sale was negotiated by the Principal Stockholders because it was merely a continuation of the process Defendants had started months before and continued after the bankruptcy filing. Defendants should not be permitted to hide behind unfounded legal arguments and block Plaintiffs from proceeding with factual discovery where, as here, the allegations are more than sufficient to state a claim.

KIRKLAND & ELLIS LLP

The Honorable P. Kevin Castel
August 2, 2021
Page 5

### B.     Breach of Good Faith and Fair Dealing

Defendants' arguments with respect to Count II—Plaintiffs' claim for Defendants' breach of their duty of good faith and fair dealing—are equally defective. As a threshold matter, Defendants do not dispute that they owed a duty of good faith and fair dealing to Plaintiffs. Nor could they. "It is axiomatic that implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance." *ARI & Co. v. Regent Int'l Corp.*, 273 F. Supp. 2d 518, 521 (S.D.N.Y. 2003). Instead, Defendants assert that Plaintiffs did not in fact breach their duty of good faith and fair dealing for two separate reasons, neither of which has merit.

*First,* Defendants argue that Count II is "duplicative of the breach of contract claim" and therefore subject to dismissal. (Dkt No. 24 at 6.) Defendants' argument misconstrues the factual basis of Plaintiffs' claim and is belied by the clear allegations in the Complaint. Count I—the breach of contract claim—is premised on Defendants' failure to make TAL whole upon the completion of the Section 363 sale alleged in the Complaint. (Compl. ¶¶ 73-80.) In contrast, Count II is based on different facts. That claim is based on Defendants' breach of their duty of good faith inherent in the contract through their threats and attempts to coerce TAL. As alleged in the Complaint, Defendants received several attractive offers for Brooks Brothers in 2019. (*Id*. ¶ 84.) These offers were beneficial for the shareholders and the Company. But all of the offers were below the "Minimum Valuation" in the Stockholders Agreement and, therefore, would have triggered the Make Whole obligation. (*Id*. ¶ 46.) As noted, rather than pursue these attractive offers, Defendants chose instead to attempt to strong-arm TAL into giving up its contractual rights. Defendants specifically told TAL that it would not pursue any of the opportunities unless TAL gave up its rights and, when TAL refused to do so, Defendants threatened to effectuate the sale of the company in bankruptcy. (*Id*. ¶¶ 53-54.) Defendants' conduct, as alleged, is the definition of "bad faith." The effect of Defendants' actions was to essentially read the Make Whole Provision out of the contract and "injur[e] the right of [TAL] to receive the fruits of the contract." *M/A–COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990).

*Second*, Defendants misguidedly argue that the Complaint's allegations "imply that the Del Vecchio Defendants had an obligation to actively shop the Company, but no such obligation exists under the terms of [sic] Stockholders Agreement or otherwise." (Dkt No. 24 at 6-7.) The Complaint alleges no such thing; nor do Plaintiffs need to prove such an obligation to sustain Count II. Rather, as alleged in the Complaint, Defendants voluntarily chose to begin exploring sale opportunities for the Company in 2019. (Compl. ¶ 44.) In fact, Claudio Del Vecchio began this process in secret, without consulting or advising either the Board of Directors of the Company or Plaintiffs. Having begun that process though, Defendants had an implied duty, inherent in all New York contracts, to deal with Plaintiffs in good faith during the course of their contractual performance and to fulfill Defendants' contractual obligations to Plaintiffs. *Dalton v.*

KIRKLAND & ELLIS LLP

The Honorable P. Kevin Castel
August 2, 2021
Page 6

*Educ. Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995) ("Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance.") As alleged in the Complaint, Plaintiffs did not do so because, in the course of "shopping" the Company, they sought to coerce TAL into giving up its rights and made good on their threat to "throw" the Company into bankruptcy and pursue a sale there in an unfounded attempt to frustrate TAL's contractual rights. (Compl. ¶¶ 53-54.) Defendants' pre-motion letters gloss over these detailed factual allegations of Defendants' wrongful conduct and instead attempt to recast the allegations in Count II as duplicative of the breach of contract claim itself. Plaintiffs' allegations state a claim for breach of the implied duty of good faith and fair dealing.

  C.  **Breach of Fiduciary Duty**

With respect to Count III of the Complaint, Defendants again argue that they were not "under an affirmative obligation to pursue a sale of the Company that would protect TAL's investment in the Company" and had a "veto right" over any potential sale and, therefore, could not possibly have breached any fiduciary duties to minority shareholders. Once again, Defendants' argument is legally defective and misconstrues Plaintiffs' claim.

It is well-settled that majority shareholders owe fiduciary duties to minority shareholders. *Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 401 (S.D.N.Y. 2013). As the cases cited by Defendants make clear, Delaware law does not permit majority shareholders to "to use their control over corporate property or processes to exploit the minority [shareholders]." *Thorpe v. CERBCO, Inc.*, 1993 WL 443406, at *7 (Del. Ch. Oct. 29, 1993) (cited at Dkt No. 24 at 9); *In re Synthes, Inc. S'holder Litig.*, 50 A.3d 1022, 1042 (Del. Ch. 2012) (cited at Dkt No. 24 at 8). That is precisely what Plaintiffs have alleged happened here: Defendants abused their control over the Company to exploit Plaintiffs and deny them their bargained-for Make-Whole rights.

At bottom, Defendants' proffered arguments are based on a distortion of the allegations in the Complaint. Plaintiffs do not allege that Defendants had a "duty to sell [their] holdings . . . merely because a sale would profit the minority." (Dkt No. 24 at 9.) Rather, Defendants were *already* exploring a sale on their own. Having chosen to do so, controlling shareholders "must do so in accordance with any fiduciary duty owed to other stockholders." *In re Straight Path Commc'ns Inc. Consol. Stockholder Litig.*, 2018 WL 3120804, at *14 (Del. Ch. June 25, 2018). And, while controlling shareholders have a right to vote against any particular transaction, that right "does not imply a right to exploit minority stockholders." *Id*. at *16; *see also RCS Creditor Tr. v. Schorsch*, 2021 WL 1040981, at *6 (Del. Ch. Mar. 18, 2021) ("Of course, if a controller uses her voting control to bully directors, she has thereby assumed fiduciary duties."). Put differently, a shareholder's right to vote in its self-interest does not eliminate its fiduciary duty to

**KIRKLAND & ELLIS LLP**

The Honorable P. Kevin Castel
August 2, 2021
Page 7

minority shareholders. *In re Delphi Fin. Grp. S'holder Litig.*, 2012 WL 729232, *15 (Del. Ch. Mar. 6, 2012).

Here, Defendants did not simply vote "no" on a proposed transaction. Rather, they attempted to exploit minority shareholders by only agreeing to pursue a transaction if the minority shareholders gave up their independent contractual rights, for the benefit of the majority shareholder. And, the Del Vecchios tried to back up their request with a threat of "rolling the dice" by pursuing the sale in bankruptcy, which is exactly what ultimately happened. Thus, this case is analogous to *In re Delphi Financial*. 2012 WL 729232 (Del. Ch. Mar. 6, 2012). In that case, the controlling shareholder held all of the company's Class B shares, and the company charter stated that, in any merger or sale, Class A and Class B shares have to be acquired for the same amount. *Id*., at *3. In the merger at issue in the case, though, the controlling shareholder told the company that it would only approve the sale if Class A shareholders gave up their rights to equal consideration and amended the charter. *Id*. at *11. And, like the Defendants here, the controlling shareholder argued that it was "free to consider its interests alone in weighing the decision to sell its shares." *Id*. at *15. The court rejected that argument, concluding that the plaintiffs were "reasonably likely to be able to demonstrate at trial that in negotiating for disparate consideration and only agreeing to support the merger if he received it, [the controlling shareholder] violated duties to the stockholders." *Id*. at *17. The same is true here. As in *Delphi*, Defendants' coercive threat only to pursue beneficial transactions for all shareholders if minority shareholders gave up their contractual rights for the benefit of the majority shareholders "violated duties to the stockholders." *Id*. Based on these facts, the Complaint states a breach of fiduciary duty claim.

### D. Tortious Interference

Neither of Defendants' attacks on Count IV—Plaintiffs' claim against Claudio Del Vecchio for tortious interference with contract—has merit. *First*, contrary to Defendants' claim, the Complaint sufficiently pleads a breach of contract for all the reasons discussed above. *See supra* § III.A. *Second*, the Complaint sufficiently states a claim against Claudio Del Vecchio because he was not acting in his "official capacity" as an officer or director of the Company when he tortiously interfered with TAL's contract with Brooks Brothers.

To be sure, Claudio Del Vecchio wore many hats in the events alleged in the Complaint. In addition to serving as the Company's Chairman and CEO, he was also the Trustee of several of the majority shareholders and the alter ego of the others. (Compl. ¶¶ 64-72.) As alleged in the Complaint, Claudio Del Vecchio was acting on behalf of the majority shareholders when he explored a sale of the Company and ultimately attempted to coerce Plaintiffs into giving up its contract rights. Indeed, as alleged in the Complaint, Mr. Del Vecchio did not involve the Board in the sale process at all. (*Id*. ¶¶ 44, 47.) Roger Lee, TAL's CEO, was a member of the Board of

**KIRKLAND & ELLIS LLP**

The Honorable P. Kevin Castel
August 2, 2021
Page 8

Directors but only learned of the process when he specifically asked for information. (*Id.* ¶ 52.) The sale process was never discussed at Board of Directors meetings. (*Id.* ¶¶ 44, 47.) That is because Mr. Del Vecchio's efforts to explore a sale, and his efforts to exploit Plaintiffs, were done in his capacity as a majority shareholder. Mr. Del Vecchio was not acting as an officer or director of Brooks Brothers. Therefore, the cases cited in Defendants' pre-motion letter are not applicable.

But even if Mr. Del Vecchio were acting as an officer or director of the Company when he interfered with performance of the Stockholders Agreement, a "corporate director or officer may be held liable for tortious interference with contract where he or she 'acts for personal, rather than the corporate interests.'" *Rockland Exposition, Inc. v. Alliance of Auto. Serv. Providers of N.J.* 894 F. Supp. 2d 288, 338 (S.D.N.Y. 2012) (quoting *Joan Hansen & Co. v. Everlast World's Boxing Headquarters Corp.*, 744 N.Y.S.2d 384, 390 (2002)); *see also Hoag v. Chancellor, Inc.,* 246 A.D.2d 224, 228 (N.Y. App. Div. 1998) ("To establish a corporate officer's liability for inducing a breach of a contract between the corporation and a third party, the complaint must allege that the officers' . . . acts were taken outside the scope of their employment or that they personally profited from their acts.") (internal quotations omitted). That is precisely what is alleged in the Complaint. Plaintiffs have made specific and detailed allegations that Mr. Del Vecchio secretly pursued a sale process focused on his own personal interests, instructed his investment bankers to consider his own personal gain in evaluating sale opportunities, refused to pursue specifically alleged sale opportunities that were in the best interests of the Company and all shareholders for his own personal reasons, interfered with Plaintiffs' contractual Make-Whole rights for his own personal gain, and threatened to "throw" the Company into bankruptcy to pursue a sale there to advance his own personal interests. (*See generally* Compl.) These are not conclusory allegations. They are specific facts and conduct that were "calculated to impair the plaintiff's business for the personal profit of the defendant[s]." *Joan Hansen*, 744 N.Y.S.2d at 390-91. To the extent that any heightened pleading standard applies, the Complaint's detailed allegations, as described above, plainly meet it.

### E. Fraudulent Inducement

With respect to Count V, Defendant Claudio Del Vecchio intends to move to dismiss because a claim for fraudulent inducement "with respect to a promise of some future actions" "must allege that the speaker did not intend to fulfill the promise at the time it was made." (Dkt No. 24 at 10.) But that is exactly what the Complaint alleges. To induce Plaintiffs to invest in Brooks Brothers, Claudio Del Vecchio "assured Plaintiffs" that he "would use his own funds to keep Brooks Brothers out of bankruptcy" (Compl. ¶ 106) But, as alleged in the Complaint, "Claudio Del Vecchio knew these statements were false at the time he made them" because he "did not have any intention of using his own money to keep Brooks Brothers out of bankruptcy."

**KIRKLAND & ELLIS LLP**

The Honorable P. Kevin Castel
August 2, 2021
Page 9

(*Id*. ¶ 107.) The Complaint also contains specific allegations regarding the time, place, and context for these representations, taking them outside the realm of conclusory allegations. (*Id*. ¶¶ 33-34.) Moreover, Plaintiffs are not simply claiming that "defendants never intended to perform" under the contract. *Scott-Macon Sec., Inc. v. Zoltek Cos.*, 2005 WL 1138476, at *11 (S.D.N.Y. May 12, 2005); Dkt No. 24 at 10. Rather, Claudio Del Vecchio's false assurances about his intentions in 2016 are separate factual representations he made at the time and on which Plaintiffs relied. These allegations are sufficient to state a claim for fraudulent inducement.

      **F.**      **Defendant Peak Trust Company**

In its pre-motion letter, Defendant Peak Trust Company ("Peak") generally indicates that it intends to join in the potential motions of the other Defendants. (Dkt No. 25.) Peak raises two additional arguments in its pre-motion letter, however. Peak argues that Counts II and III against it should be dismissed because the Complaint does not allege any specific conduct by the Defendants for which it is a trustee. Peak further argues that the Complaint fails to allege sufficiently that the Del Vecchios are alter egos of those trusts. (*Id*. at 3.)

Peak is wrong on both counts. *First*, as discussed above, the Complaint includes detailed and specific allegations regarding the Del Vecchio Defendants' conduct that breached their fiduciary and good faith duties to Plaintiffs. *See supra* §§ III.B & III.C. And the Complaint alleges that the Del Vecchios engaged in this conduct on behalf of and as alter egos of the CDV Trust and CDV 2010 Annuity Trust. (Compl. ¶¶ 64-72.) Specifically, the Complaint alleges that the Del Vecchios "completely dominate" and exercise "complete control" of the trust defendants. (*Id*. ¶¶ 64-65.) In response, Peak asserts that, in *Babitt v. Vebeliunas*, 332 F.3d 85 (2d Cir. 2003), the Second Circuit held "the 'alter ego' theory applies *only* to cases involving 'allegations that the respective parties used trusts to conceal assets or engaged in fraudulent conveyances to shield funds from adverse judgment.'" (Dkt No. 25 at 3 (emphasis added).) But *Babitt* contains no such holding. Far from reaching a definitive holding on the contours of "alter ego" law, the Court did "not decide whether a trust may be pierced in the instant case as a matter of law in New York" because it was not necessary for "resolution of th[e] appeal." *Id*. at 91. Instead, the Second Circuit "[a]ssum[ed] that New York courts would allow the veil of a trust to be pierced in situations where complete domination of a trust has been shown," but found the specific allegations of "complete domination" in that particular case lacking. *Id*. *Babitt* does not limit the reach of "alter ego" theories as Peak suggests. Because the Complaint here alleges that the Del Vecchios exercised complete control and dominion over the CDV Trust and the CDV 2010 Annuity Trust, Peak's arguments with respect to Counts II and III are unavailing.

                                  \*             \*             \*

**KIRKLAND & ELLIS LLP**

The Honorable P. Kevin Castel
August 2, 2021
Page 10

In the event that Defendants are granted leave to file their motion, Defendants propose the following briefing schedule: (i) all Defendants shall file their motions on or before August 16, 2021; (ii) Plaintiffs shall file their oppositions on or before September 13, 2021; and (iii) Defendants shall file any replies on or before September 27, 2021. Plaintiffs' proposed schedule provides Defendants with more than enough time to prepare their motion, while providing for an efficient resolution of these issues. Indeed, some of the Defendants were personally served nearly two months ago and their proposed motion to dismiss arguments are apparently already well-developed. Defendants' proposal that they should be afforded another month to file a responsive pleading in this case is excessive. Plaintiffs will be prepared to discuss the briefing schedule at the initial pretrial conference.

### IV.   MOTION TO STAY

Defendants seek to stay discovery while their proposed motion to dismiss is pending. No good cause exists to stay discovery in this case, however. If Defendants are granted leave to file a motion to stay, Plaintiffs will fully explain why it is not warranted in their opposition. Plaintiffs also briefly summarize the reasons why a stay is inappropriate in this case below.

"[D]iscovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed." *Moran v. Flaherty*, 1992 WL 276913, at *1 (S.D.N.Y. Sep. 25, 1992); *accord Guiffre v. Maxwell*, 2016 WL 254932, at *1 (S.D.N.Y. Jan. 20, 2016). Rather, discovery should only be stayed if defendant shows "good cause" for such relief. *Guiffre*, 2016 WL 254932, at *1. "The Court analyzes good cause by application of three factors: (1) whether a defendant has made a strong showing that the plaintiff's claim is unmeritorious, (2) the breadth of discovery and the burden of responding to it, and (3) the risk of unfair prejudice to the party opposing the stay." *Id.* As the moving party, Defendants bear the burden of demonstrating good cause under Rule 26(c). *Ema Fin., LLC v. Vystar Corp.*, 336 F.R.D. 75, 79 (S.D.N.Y. 2020).

Defendants' pre-motion letter falls far short of demonstrating "good cause." *First*, Defendants do not make any "strong showing" that Plaintiffs' claims are unmeritorious. Indeed, Defendants do not even try to make such a showing and instead simply refer the Court to their motion to dismiss arguments and claim, in conclusory fashion, that Plaintiffs' claims are "unfounded." (Dkt No. 24, at 12.) In other words, Defendants simply reiterate their motion to dismiss arguments in seeking to stay all discovery in the case. But, of course, if repeating motion to dismiss arguments were enough to make a "strong showing," this factor would be satisfied in every case in which a defendant files a motion to dismiss. That is not the law. *Moran*, 1992 WL 276913, at *1 ("discovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed"). Moreover, in this letter, Plaintiffs have "addresse[d] each basis for Defendant[s'] dismissal arguments" and explained why none have merit. *Guiffre*, 2016 WL 254932, at *2. Given that Plaintiffs have put forward "strong arguments" to defeat the

**KIRKLAND & ELLIS LLP**

The Honorable P. Kevin Castel
August 2, 2021
Page 11

motion to dismiss, it follows that "Defendant[s'] argument does not rise to a level of the requisite 'strong showing' that Plaintiff's claim is unmeritorious." *Id*.

*Second*, Defendants have no basis to argue that the "breadth of discovery" warrants a stay. Neither side has yet served discovery requests. *Brooks v. Macy's, Inc.*, 2010 WL 5297756, at *2 (S.D.N.Y. Dec. 21, 2010) ("Because no discovery requests have been served, it is impossible to assess both the breadth of the discovery sought and the prejudice, if any, that defendant would suffer in responding to the requests."). Defendants have not shown that discovery in this case would be so expansive as to warrant a stay, but rather baldly assert discovery would be broad. Such an unfounded assertion is insufficient to warrant imposition of a stay; indeed, if the law were otherwise, once again, a stay would be imposed in nearly every case. In any event, Defendants' fears about expansive discovery are overblown. Most of the relevant conduct for Plaintiffs' fiduciary-duty and contract-based claims occurred over the course of a little more than a year. And several of the Defendants are individuals or trustees, which will not involve "broad discovery of corporate documents." (Dkt No. 24, at 12.) In any event, to the extent there is any concern with the breadth of discovery, the appropriate remedy would be staging or sequencing discovery, beginning with document discovery, not a blanket stay of all discovery.

*Third*, there is a risk of prejudice to Plaintiffs from a stay because it would unduly delay the action. It has already been nearly a year since the Section 363 sale closed and Plaintiffs have not been made whole. Plaintiffs filed their Complaint over two months ago. Under Defendants' proposed discovery, a stay could delay this case for an additional four months or more. There is no need to further delay Plaintiffs' ability to seek compensation for Defendants' actions.

\*      \*      \*

If Defendants are granted leave to file a motion to stay discovery, Defendants' proposed briefing schedule is inappropriate. Defendants' suggestion that the motion to stay be briefed on the exact same schedule as their motion to dismiss would, in effect, grant the relief requested in the motion—a stay of discovery while the Court considers the motion to dismiss—just through operation of the briefing schedule. Plaintiffs submit that Defendants should not be granted leave to file a motion to stay discovery, but if leave is granted, to allow for a prompt resolution of the motion to stay, Plaintiffs propose the following briefing schedule: (i) Defendants file their motion on August 12, 2021; and (ii) Plaintiffs file their opposition on August 26, 2021. Plaintiffs respectfully submit that no reply is necessary on such an issue, but if the Court were inclined to allow one, Plaintiffs suggest that the deadline for any such reply be August 30, 2021.

We are available to discuss any issues raised in this letter or Defendants' pre-motion letters should Your Honor have questions.

# KIRKLAND & ELLIS LLP

The Honorable P. Kevin Castel
August 2, 2021
Page 12

                              Sincerely,

                              */s/ A. Katrine Jakola, P.C.*

                              A. Katrine Jakola, P.C.

cc: All Counsel of Record (via ECF)